BENOIST *et al.*, Respondents, *vs.* THE CITY OF ST. LOUIS, Appellant.

1. Under the charter of the city of St. Louis, of 1841, there may be different taxes or rates of taxes in the same year, provided the aggregate does not exceed the limit fixed by the charter.
2. Under that charter, the city council might levy taxes either for the fiscal year or the calendar year, in its discretion.

## *Appeal from St. Louis Circuit Court.*

Petition filed by the respondents to enjoin the appellant from selling land for taxes alleged to be illegal.

The cause was submitted to the court upon an agreed statement of facts. The facts agreed upon were substantially as follows : " That the property upon which the taxes were levied was first brought within the limits of the city by the charter of 1841 ; that the conditions of the 17th section of article 7, of the charter of 1841, were not complied with until the 25th day of October, 1850 ; that, for the year 1850, real estate within the " old limits" was taxed at the rate of one per centum for city purposes, besides the special taxes authorized by acts of the general assembly and the city ordinances ; that, by the 14th section of article 7, of the charter of 1843, it is declared that the fiscal year of the city shall terminate on the day preceding the second Monday of April in each year, and the disbursements, expenditures and appropriations of the city are made and conducted in reference to the fiscal year established by the charter ; that, in the month of November, 1850, an ordinance was passed by the city, levying a tax for the year 1850, of a half of one per cent. on all property within the new limits, and including the land of the plaintiffs ; and that such tax is equal to a tax at the rate of the sixteenth of one per cent. per annum, from the second Monday of April to the 25th of October, 1850, and a tax at the rate of one per cent. per annum from the 25th of October to the day preceding the second Monday of April following."

Upon these facts, two questions were presented for consideration, which are stated in the opinion of the court. The Circuit Court decided that the city could collect more than one sixteenth of one per cent. for city purposes for. the year 1850, but that taxes could only be levied and collected by the city according to the calendar year. The injunction was rendered perpetual as to a portion of the taxes claimed, and the city appealed to this court.

*Geyer & Dayton* and *J. C. Richardson,* for appellant. I. The Circuit Court erred in deciding that taxes must be levied and collected according to the calendar and not to the fiscal year. In the absence of any express directions.upon the subject in the charter, some discretion may fairly be considered as given to the city government, in fixing what particular period shall compose each year. As the disbursements and appropriations of the city are made and conducted in reference to the fiscal year, there is a fitness and convenience, without any conflict with existing laws, in levying and collecting taxes in reference to that year, instead of the calendar year. A reference to some provisions of the charter strengthens the conclusion that the fiscal year is the one intended. Sec. 14, art. 7. Sec. 1, art. 7. Sec. 1, art. 3. Sec. 20, art. 7. Sec. 22, art. 7. Art. 4. Art. 2. Art. 5. II. The power to tax property in the new limits, at the same rate as in the old, attached, for the future, the moment the condition of sec. 17, art. 7 of charter of 1841 was performed; and this performance having been completed on the 25th of October, 1850, in the midst of a fiscal year, the city had the right to impose taxes, for the residue of such year, at the same rate per year at which taxes had been imposed on property in the old limits that same year. The charter does not prescribe the time of the year at which taxes for the year shall be levied or collected. Without conflict with the charter, the city might levy and collect all its taxes for the year, within the last month of the year, or might divide the year into quarters, and collect one fourth of the annual tax each quarter.

*Haight & Shepley,* for respondents. I. The system of city taxation is based upon, and the annual tax is for the calendar year. This is obvious from the provisions of the charter. The first subdivision of the second section of article 3, provides that the mayor and common council shall have the power "to levy and collect taxes not exceeding one per centum," &c. This means an annual tax. Whenever the word "year" is used in statutes or ordinances, it will be held to mean the calendar year, unless there is something in the context that shows otherwise. Again, the ordinances of the city for the assessment and collection of the taxes on property within the city limits, all look to the idea that a calendar year is intended. (Rev. Ord. 1850, p. 126, secs. 1, 3, 5 and 6.) It is provided that the assessors shall, *on the first Monday of February,* proceed to assess the property within the city subject to taxation. If the tax is to be levied for the year commencing the second Monday of April, here is a provision for assessing the value of the property, at a time altogether outside of the year for which the tax is laid. This would be in conflict with the power granted by the charter, (art. 2, sec. 5,) as well as ordinance 2486, both of which proceed upon the basis that the assessment is to be made upon the value of the property within the year in which the tax is levied, be it fiscal or be it calendar. The "fiscal year" was first established by the charter of 1843, merely for the convenience of the city in keeping and balancing her accounts at the close of the different administrations. It makes no difference in keeping these accounts, whether taxes are levied for the year commencing January 1st, or the year commencing the second Monday of April. The state and county taxes are levied and assessed according to the calendar year, yet there is, in the statute regulating that matter, no express provision on the subject. The city legislation seems to be taken from the state legislation on the same subject. II. Whether the year for which taxes were to be levied was the fiscal or the calendar year, the injunction was properly granted, for the reason that the city had no power to

levy for that year any larger tax than the one-sixteenth of one per cent., with the exception of the special taxes. The ordinance No. 2520 fixes the taxation upon property in the new limits, at one-half of one per cent. for the whole of the fiscal year ending the day prior to the second Monday of April, 1851, when, confessedly, they had no power to levy more than one-sixteenth of one per cent. up to the 25th of October, 1850, beside the special taxes. If they could levy for any part of that year a tax of more than one-sixteenth of one per cent., they might possibly have done it by levying, in so many words, a tax at the rate of one-sixteenth of one per cent. up to October 25, 1850, and at the rate of one-half of one per cent. for the remainder of the taxable year; but they have not done this. For the whole year, they have levied one uniform tax upon property in the new limits, altogether above that which they had a right to impose, for part of the year at least. Nor does it help the matter out, because, by calculation, we may discover that the tax which they have levied does not exceed one-sixteenth of one per cent. up to October 25, and one per cent. for the remainder of the year.

GAMBLE, Judge, delivered the opinion of the court.

1. The parties in this case agreed upon and signed a written statement of facts, and at the end of it, stated the questions of law which they desired the court to consider and decide. These questions are thus stated: " the only questions presented for the consideration of the court on the above facts are, 1. Whether the city could demand or collect more than one-sixteenth of one per cent. for any part of the year 1850; 2. Whether, in this case, the city is required to levy and collect taxes according to the calendar year, or a year beginning on the second Monday of April and ending on the day preceding the second Monday of April following." It will be seen that both these are questions of power, and do not involve the consideration of whether the measures adopted by the city author-

ities were proper or expedient measures in the execution of the power, if such power existed.

On the first question, it is necessary briefly to state the provisions of the charter under which this property was subjected to taxation. By the charter of 1841, the limits of the city were greatly extended, and embraced a large scope of country which had never been laid out in lots. This property, being brought within the city, was subjected to the power of the corporation, and would have become liable to the burdens to which all other property in the city, was subject, but for a limitation on the taxing power of the city government. It was provided in the charter, that the city should extend the paving of certain streets and avenues through the territory thus brought within the city to the new boundaries of the city, and that, until such improvements were made, the city should not have power to impose a tax for city purposes upon the property brought by the act within the city, exceeding the one-sixteenth of one per cent. The improvements thus required to be made were not completed until the 25th day of October, 1850, although the city claimed that they had been substantially completed some years before. The question in relation to their completion was determined in this court in the case of *Allen* v. *The City*, 13 Mo. Rep. 400. At the time of that decision, there was in force an ordinance passed 29th March, 1850, which imposed a tax of three-fourths of one per cent. upon all property within the city made taxable by law, for state purposes, unless a different rate should be fixed by ordinance. When it was decided that the improvements had not been made, as required by the charter, so as to admit of a greater tax being imposed than one-sixteenth of one per cent. upon the property within what was called the "new limits," an ordinance was passed fixing the rate of taxation upon all property within the "old limits" at one per cent. for the year 1850, and leaving the property in the new limits without any rate of taxation, except for the special taxes authorized by acts of the general assembly. This ordinance was passed July

26, 1850. The city government, with all diligence, applied itself to the completion of the improvements required by the charter, and by the 25th of October of that year, the requirements in the charter were all fulfilled, and the property within the new limits became subject to the same rate of taxation as property within the old limits. An ordinance was passed November 2, 1850, imposing a tax of one-half of one per cent. upon all property within the new limits made taxable for state purposes, for the fiscal year ending the day prior to the second Monday in April, 1851. It is admitted by the parties, that the tax of one-half of one per cent. thus levied, is equal to one-sixteenth of one per cent. as an annual tax, calculated from the second Monday of April to the 25th of October, 1850, and a tax of one per cent. from the 25th of October, 1850, to the second Monday of April, 1851. The question is presented upon these facts, whether the city could impose any tax beyond the one-sixteenth of one per cent., for any part of the year 1850, as the conditions upon which a larger tax was permitted by the charter, were not performed until October of that year.

The charter of 1841, which extended the limits of the city so as to embrace the property of the plaintiffs, conferred upon the city council the power to levy and collect taxes not exceeding a certain rate per cent., in language that would have authorized the same rate of taxation upon the property then brought within the city limits that was imposed upon the property within the former limits. The section, then, which requires the paving of certain streets, and, until that is done, prohibits the levy of any tax beyond the one-sixteenth of one per cent. is a limitation upon the general power conferred by the former clause. That restriction is upon the rate of taxation until a certain event, and when then that event occurs, the restriction ceases and the power is at large. When, then, the restriction no longer exists, the question arises, whether there is any requisition in the charter that taxes shall be imposed for an entire year, so that there cannot be several different taxes or rates

of taxes upon the same property in the same year, although the whole amount levied does not exceed the limit of one per cent. fixed by the charter. It is not pretended that, in the charter, there is any express provision directing how the general power to levy taxes shall be exercised. It is admitted, that the only limit in amount is the one per cent. stated in the charter. To give to this restriction its proper force, it is necessary to understand it as one per cent. for a year; for if several taxes, of one per cent. each, might be levied upon the same property in one year, the restriction would be entirely nugatory. The limit of the right to tax is one per cent. per annum. The power is, "to levy and collect taxes not exceeding one per cent. upon all property made taxable by law for state purposes." Within the limit thus prescribed, the power may be exercised according to the discretion of the city council. The power can only be exceeded by levying a tax on property not taxable for state purposes, or levying a greater amount of tax in any one year than one per cent. A tax may be levied for a specific portion of a year, and, indeed, I see no reason to doubt that, as the city council sits several times in a year, it may not levy several distinct taxes on the same property during the same year, provided the aggregate does not exceed one per cent. The question, whether any greater rate of taxation than one-sixteenth of one per cent. could be levied for any part of the year 1850, is decided by determining 1st, that when the restriction to that rate ceased by the completion of the improvements, whether in the beginning or middle of the year, the power, under the general grant, might be exercised in any mode within the discretion of the council, and, 2d, that the power may be exercised for a portion of a year.

The Circuit Court, by its decree, decided that question for the city, as it maintained that the tax levied was correctly imposed at a rate which was equal to one-sixteenth of one per cent. from the second Monday of April to the 25th of October, and one per cent. from the last named day to the 1st of January, 1851.

2. But the decision maintained that the tax must be levied. according to the calendar year, and that, therefore, the attempt to extend the tax to the second Monday of April, 1851, was illegal. This, then, presents the second question which the parties, in their agreed case, desire the court to consider, that is, whether the council can levy a tax for a year, commencing in April, in one year, and ending in April of the next year.

It is not pretended that the charter, in any of its provisions, establishes the beginning and end of the year for which taxes are to be imposed; and, indeed, it is only by inference from the limitation upon the power to levy taxes, that we ascertain that taxes are to be levied with any reference to the year.

The period of a year is several times mentioned in the charter, and reference will be made to some of the instances in which it is spoken of. " The board of delegates shall be composed of two members for each ward, to be chosen by the qualified voters of the several wards, *for one year*." " The board of aldermen shall consist of two members for each ward, chosen by the qualified voters, *for two years*." " The seats of those of the first class shall be vacated at the expiration of the *first year ;* and of the second class, at the expiration of the second year ; so that one half may be chosen every year." " A general election for all the officers of the corporation required to be elected by this act, or any ordinance of the city, shall be holden on the first Monday of April in each year." " The *fiscal year* of the city shall terminate on the day preceding the second Monday in April *in each year*." " The appropriations of the city council, for the payment of interest, for improvements, and for city expenses during any *one fiscal year*, shall not exceed the amount of the income of the preceding *fiscal year*." " The city council shall cause to be published, within one month after the end of each fiscal year, a full, complete and detailed statement of all moneys received and expended by the corporation during the preceding fiscal

year." These are sufficient extracts from the charter to show the periods referred to as years. The delegates and aldermen are elected—the delegates for one, and the aldermen for two years. The period has no reference to the calendar year, but extends from the April of one year to the April in the next year, when a new city council is to be brought into being—the aldermen continuing to hold for two such years. The clause fixing the fiscal year declares that it shall terminate on the day preceding the second Monday of April *in each year*, that is, in each calendar year. The other provisions in relation to the fiscal year show the intention that the accounts of the revenue of each year shall be brought up to the close of each administration, although, as is said, the accounts *might be* so kept as to show the revenue of each fiscal year, notwithstanding it embraces parts of two calendar years, even if the taxes were imposed with reference to the calendar year.

In the absence, then, of any provision in the charter, fixing the calendar year as that for which taxes are to be levied, the city council would have the discretion to fix the time at which the period of a year is to commence, always subject to the limitation that the taxes of the year so fixed, shall not exceed the limit prescribed in the charter; and if we had anything to say about the propriety of fixing the year, as the calendar or fiscal year, we would say that it was most proper to adopt the fiscal year. When the whole rate of tax allowed by the charter has been levied for a year, either fiscal or calendar, and a change is made to the other period, it is necessary to see that the tax subsequently levied for the altered period does not include any of the time for which the first tax was levied, as that would be to exceed the limit fixed by the charter on the power to tax. In the present case, if the previous taxes levied upon this property were levied according to the fiscal year, then the plaintiffs are only required by the ordinance to pay taxes for a year from the end of the period for which they had before paid them. But if the property had before been taxed according to the calendar year, then, according to their

views, they were subject to pay taxes for the whole of the year 1850, from the first of January to the first·of January, 1851; whereas, the ordinance in question omits to tax the property altogether, from the 1st of January to the second Monday of April, 1850, and makes the year end on the second Monday of April, 1851. Nothing appears in the case to show that, in relation to the property in the new limits, the taxes do not continue to be levied according to the fiscal year, and so the property there continues to be taxed by the year, although a period different from the calendar year.

The ordinances of the city, referred to in the argument, may show the system previously adopted for the levying and collecting taxes in the city, but do not furnish any light upon the question of power, which is the subject of consideration. Inconvenience may be produced to the accounting officers of the city, by having taxes imposed upon property in different parts of the city for different periods, but such inconvenience does not affect the power to adopt that as the mode of levying taxes, nor authorize a citizen to complain of the burden imposed, when he pays no more than his fellow citizens, and no more than the rate allowed to be imposed by law.

The Circuit Court then, in my judgment, erred in restraining the city from the collection of so much of the tax imposed upon the plaintiffs as was considered to be for that portion of the year 1851, between the 1st day of January and the day preceding the second Monday in April.

It has been argued that the tax attempted to be imposed is illegal, as it imposes a rate of one-half of one per cent. for the whole year ending on the day preceding the second Monday of April, because, until the completion of the improvements on the 25th of October, the charter expressly prohibited any greater rate than one-sixteenth of one per cent. It is admitted in the case agreed, that the rate adopted is precisely equal to one-sixteenth of one per cent. from the beginning of the fiscal year to the 25th of October, and one per cent. from that date to the termination of that year. We are dealing with

a case in which the question is, whether there has been an attempt to collect from the plaintiffs an amount of tax beyond that which might lawfully be imposed, and the parties expressly admit that the tax imposed does not exceed in amount the sum which, according to this opinion, might be legally imposed. The case then is one in which the courts are called upon to interfere, when it is mathematically certain that the plaintiffs are not injured, and when the tax imposed by the ordinance would be certainly legal, if imposed with a few additional words in the ordinance. I think this is not a case for an injunction, and that the judgment of the Circuit Court ought to be reversed, the injunction dissolved, and judgment rendered for the defendants.

RYLAND, Judge. I concur.

SCOTT, J., dissenting. This case depends on the construction of the charter of 1841, which exempted the lots and grounds beyond the (then) present limits of the city from any tax exceeding one-sixteenth of one per cent. before certain improvements therein mentioned were completed. The meaning of the act is, that the new limits shall not be taxed more than one-sixteenth of one per cent. per annum. Was the year contemplated the fiscal year, or the calendar year? There is nothing in the law itself, which furnishes a means for the solution of this question, and we are thrown upon the city ordinances, in order to ascertain what was intended. There is nothing in the reason of the thing, which makes the year for which taxes are to be laid and collected correspondent with the fiscal year. The fiscal year of the state does not correspond with the year for which taxes are assessed and collected. The fiscal year of the city begins the day before the second Monday in April. The ordinances of the city require the assessment of the revenue to be commenced in February, thus showing that the year for taxation is different from the fiscal year. As the assessment must commence on the first of February, of the fiscal

13—VOL. XIX.

year, in the year within which taxes are to be laid and collected, it would be singular that the assessment should begin in February, when it is not to be completed until May. This would make the assessment run into two fiscal years, so that the taxes would be assessed partly in one fiscal year and partly in another ; whereas, it would seem that the reason of the thing is, that the assessment and collection should both be for the same year ; and that can only be done consistently with the ordinances, by holding that the year contemplated is a calendar year. The extending the tax from one calendar year, so as to make it cover part of another year, was an evasion of the restriction imposed upon the power of taxing the new limits, and was, therefore, unauthorized.

The judgment, in my opinion, ought to be affirmed.